IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PHILLIP MCGILBERRY                                                              PLAINTIFF

v.                                                                    No. 4:16-CV-40-SA-DAS

TIMOTHY MORRIS, ET AL.                                                        DEFENDANTS

MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Phillip McGilberry, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to protect him against attack by other inmates – and that the defendants provided inadequate medical care for his resulting injuries. The defendants have moved [54] for summary judgment, and Mr. McGilberry has not responded. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgment will be entered in favor of the defendants.

Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

Undisputed Material Facts[1]

The court has drawn the facts in this case from the pleadings and documents on the docket and the testimony provided by plaintiff during his August 20, 2016, *Spears* hearing. While housed in Unit

---

[1] For the purposes of this memorandum opinion only, the court will accept the plaintiff's allegations as true. See Fed. R. Civ. P. 56.

29 K-Building, Mr. McGilberry told Wardens Timothy Morris and Johnnie Denmark that his cell door would not lock. Both Morris and Denmark told him the doors would be repaired, but they were not. The plaintiff alleges that he was later attacked in his cell. The Magistrate Judge summarized the facts in his Report and Recommendation:

> On July 18, [2015], the Trusty passing out food put McGilberry's in the cell door tray hole, then came back and asked, "Did I give you two cookies?" McGilberry said that he only received one cookie, but the Trusty did not believe him and told some gang members that McGilberry had "disrespected" him. McGilberry believes that the Trusty is a member of the Gangster Disciples prison gang, and the two had argued in the past. That same day, six to eight members of the Gangster Disciples entered his cell through the malfunctioning door, beat him, and stabbed him thirteen times. Other inmates nearby raised the alarm and called to prison guards to break up the fight, and on hearing the ruckus, the gang members fled. McGilberry sustained stab wounds on his neck, ear, arm, legs, and back. He was bleeding badly and asked to be taken to medical, but the officer on-scene said he had to wait for the senior officer to do so. He was eventually transported to medical and treated for his injuries.

Report and Recommendation [14], pp. 1-2. Mr. McGilberry was quickly taken to the prison hospital, then transferred to a local civilian hospital. Once he was examined and treated there, he was airlifted to the University of Mississippi Medical Center in Jackson, Mississippi. Mr. McGilberry seeks monetary damages in the amount of $500,000.00. Doc. 1 at 4.

### Failure to Protect

Mr. McGilberry claims that the defendants failed to protect him from attack by other inmates. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defender's Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate

indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. However, "in order to be deliberately indifferent, a prison official must be *subjectively aware* of the risk." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (emphasis in original). In *Adames*, the prison officials knew that the locks on the cells in Adames' unit could be defeated – and that prisoners had defeated the locks, exited their cells, and attacked other inmates. *Id*. at 513. The Fifth Circuit, however, found the defendants not to be deliberately

indifferent because the problem with the locks was neither longstanding nor pervasive – and because Adames did not provide the defendants with information showing that he, specifically, was in danger other inmates in the unit. *Id*. Thus, in the absence of proof that prison officials had information regarding a specific threat to an inmate's safety, the plaintiff cannot show that those officials were deliberately indifferent to his health or safety. *Id*.

## Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37. Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The defense of qualified immunity "alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." *Id*. (internal citations omitted).

In this case, Mr. McGilberry's allegations and proof do not rise to the level of deliberate indifference. To prove deliberate indifference, Mr. McGilberry must show that the defendants knew of facts giving rise to an inference that McGilberry faced a specific substantial threat of serious harm – *and that they actually drew that inference*. In the absence of a specific threat, Mr. McGilberry must allege that he was housed in a prison environment "where terror reigns." *Jones, supra*. At his *Spears* hearing, Mr. McGilberry testified that, prior to the attack, he had no reason to believe that he needed to be placed in protective custody:

| | |
|---|---|
| Magistrate Judge: | Was there any reason to think you needed protective custody prior to any of this happening? |
| McGilberry: | No, sir. |

Thus, Mr. McGilberry did not believe he was in danger prior to the attack, and he clearly did not believe that he was housed in a unit "where terror reigns."

In *Adames v. Perez*, 331 F.3d 508 (5th Cir. 2003) prison officials were not deliberately indifferent to an inmate's safety after he was attacked by a gang member who "jimmied" open his cell door, even though prison officials had received prior tips that some inmates had previously been able

to "jimmy" their cell doors open and had attacked other inmates. *Adames v. Perez,* 331 F.3d 508, 510-511 (5th Cir. 508, 510-511).

Mr. McGilberry did not anticipate that he would be attacked; as such, the wardens in his unit could not have done so. Based upon the record in this case, the defendants did not knowingly violate the law, nor were they "plainly incompetent." *See Malley, supra*. As McGilberry did not inform the defendants that he faced a threat to his safety, the defendants enjoy qualified immunity, and the plaintiff's claims regarding failure to protect him against attack by other inmates must be dismissed for that reason.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not

rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

Mr. McGilberry has not shown that the defendants denied – or even delayed – medical care for the injuries he sustained during the attack (in which multiple inmates wielded knives). The attack

occurred at approximately 6:09 p.m. on July 21, 2015.[2] Given the presence of bladed weapons, it took about 12 minutes for the prison staff to secure the area. Doc. 32 at 81. Then, at 6:26 p.m., medical staff transported Mr. McGilberry via ambulance to the prison hospital in Unit 42 at Parchman. *Id.* He was assessed at 6:45 p.m., and, once stabilized, transported at 7:27 p.m. to the Bolivar County Medical Center, where he was treated. Doc. 32 at 241. Medical staff at the Bolivar County Hospital eventually determined that Mr. McGilberry may need more extensive care than he could receive there, and he was airlifted to the University of Mississippi Medical Center ("UMMC") in Jackson, Mississippi – arriving at 9:51 p.m. Doc. 32 at 45. UMMC doctors examined him, performed surgery, and provided other testing and treatment during his stay there. On July 24, 2015, Mr. McGilberry was transported back to the Mississippi State Penitentiary, where he received follow-up care. Doc. 32 at 76. Thus, he was treated immediately after he sustained his injuries – and later transported to two outside facilities, including the UMMC Medical Center in Jackson, Mississippi. Mr. McGilberry's treatment continued at the Mississippi State Penitentiary until he recovered.

The facts set forth above do not state a claim for denial of adequate medical care, as Mr. McGilberry received extensive treatment after a small delay to secure the scene because inmates had just fought each other with makeshift knives. *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). In addition, he has not shown that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince

---

[2] Mr. McGilberry alleges that the attack occurred at 4:30 p.m. on July 24, 2015, but the medical records, incident reports, and investigative documents regarding the incident make clear that the attack occurred at 6:09 p.m. on July 21, 2015. Doc. 32 at 81, 242. July 24, 2015, is the date of Mr. McGilberry's return to the Mississippi State Penitentiary after his treatment at the University of Mississippi Medical Center. Doc. 32 at 76.

a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. Instead, he quickly received medical care – and continued to receive care until he recovered. For these reasons, Mr. McGilberry's allegations regarding denial of adequate medical care must be dismissed.

## Conclusion

For the reasons set forth above, the plaintiff's claims regarding the failure to protect him against attack by other inmates must be dismissed under the doctrine of qualified immunity. In addition, his claims regarding denial of adequate medical care must be dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this, the 11th day of January, 2019.

    /s/ Sharion Aycock
    U. S. DISTRICT JUDGE